UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ELNORA C.,[1]

                                  Plaintiff,

                                                                     Case # 19-CV-1072-FPG

v.

                                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

## INTRODUCTION

Plaintiff Elnora C. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 8. For the reasons that follow, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## BACKGROUND

In July 2016, Plaintiff applied for DIB under Title II of the Act with the Social Security Administration (the "SSA"). Tr.[2] 10, 132. She alleged disability since August 8, 2015 due to a back injury. Tr. 10, 141, 153. In September 2018, Plaintiff appeared and testified at a hearing before Administrative Law Judge Rosanne M. Dummer ("the ALJ"). Tr. 10, 20. A vocational expert also testified. Tr. 10. On September 26, 2018, the ALJ issued a decision finding that Plaintiff

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, *available at* https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify the plaintiff using only her first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4.

was not disabled. Tr. 10–20. On June 20, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks and brackets omitted).

### II.   Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 404.1520(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii), (c). If the claimant does not have a severe

impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 404.1520(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from her onset date through her last insured date (June 30, 2018). Tr. 12. At step two, the ALJ found that Plaintiff

had one severe impairment: lumbar degenerative disc disease. *Id.* At step three, the ALJ found that her impairment did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Plaintiff had the RFC to perform light work with certain limitations. Tr. 13. Specifically, the ALJ found that Plaintiff could: lift/carry 20 pounds occasionally and 10 pounds frequently; sit six of eight hours and stand/walk six of eight hours; and occasionally climb ramps and stairs, balance, stoop, kneel, couch, and crawl. *Id.* The ALJ also concluded that Plaintiff should avoid ladders, scaffolds, and unprotected heights. *Id.* At steps four and five, the ALJ found that Plaintiff was capable of performing her past relevant work as a clerical worker and that there were other jobs that existed in significant numbers in the national economy that she could perform. Tr. 18–20. The ALJ therefore concluded that Plaintiff was not disabled during the relevant time period. Tr. 20.

## II.     Analysis

Plaintiff makes several arguments related to the ALJ's formulation of her RFC. Specifically, Plaintiff argues that the ALJ's RFC was improperly supported by lay opinion, was formulated in contravention of the treating physician rule, and was not supported by substantial evidence. ECF No. 7-1 at 12–20. The Court disagrees.

### A.     Lay Opinion

A claimant's RFC reflects what she "can still do despite . . . her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). An RFC determination need not "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). But "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare

4

medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (internal quotation marks omitted). In other words, an ALJ's ability to make inferences regarding the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. "While an ALJ may render common sense judgment[s] about functional capacity, she must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (brackets in original) (internal quotation marks omitted).

In this case, the ALJ "afforded some weight" to the opinion of Nikita Dave, M.D., who performed a consultative exam of Plaintiff on October 13, 2016. Tr. 17, 253–56. Plaintiff reported constant low back pain ranging from three to eight out of ten. Tr. 253. She reported that aggravating factors were prolonged sitting, lifting, and carrying, and that it helped to use heat, lie down, and go to physical therapy. *Id.* She appeared to be in no acute distress, had a normal gait, could walk on heels and toes without difficulty, had a normal stance, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from her chair without difficulty. Tr. 254. Plaintiff's squat was only "1/2 down." *Id.* Plaintiff's lumbar spine had full range of motion, although her movements were very slow and she had tenderness midline L5-S1. Tr. 255. Dr. Dave diagnosed Plaintiff with low back pain, noted her prognosis was good, and opined that she had mild to moderate limitations for prolonged sitting, prolonged standing, lifting, carrying, pushing, and pulling of heavy objects. Tr. 256. The ALJ specified that Dr. Dave's opinion was "considered in the [RFC]." Tr. 17.

Accordingly, the ALJ's RFC assessment was not based on her own lay opinion. Dr. Dave's opinion supports the ALJ's RFC assessment. *See Pellam v. Astrue*, 508 F. App'x 87, 90–91 (2d

Cir. 2013) (summary order) (upholding an ALJ's RFC determination where the ALJ "rejected" consultative examiner's opinion but the "opinion largely supported the ALJ's assessment of" claimant's RFC and the RFC was supported by the treatment notes of claimant's doctors).

Plaintiff claims that the RFC does not incorporate Dr. Dave's opined limitations as to Plaintiff's ability to lift, carry, push, and pull heavy objects. ECF No. 7-1 at 17–18. An opinion that a claimant suffers from mild to moderate limitations in these areas, however, is consistent with the ALJ's assessment of light work with additional limitations. *Gerald L. v. Comm'r of Soc. Sec.*, No. 18-CV-555, 2019 WL 4573419, at *7 (N.D.N.Y. Sept. 20, 2019) ("Dr. Prezio's assessment of 'mild to moderate limitations' in Plaintiff's ability to sit, stand, or walk is consistent with an RFC for light work." (collecting cases)); *Tompkins v. Colvin*, No. 13-CV-911, 2015 WL 10382575, at *6 (W.D.N.Y. Dec. 23, 2015) ("Plaintiff's mild to moderate limitation in prolonged sitting and standing is accommodated by the ALJ's limitation to light work as well as normal work breaks."); *Forbes v. Colvin*, No. 13-CV-207, 2015 WL 4411511, at *6 (W.D.N.Y. July 20, 2015) (affirming RFC limiting plaintiff to light work based, in part, on consultative opinion that plaintiff "had mild to moderate limitations in prolonged sitting/standing/walking, and . . . limitations in lifting/carrying/pushing/pulling greater than moderately weighted objects with regard to his lumbar spine impairment"); *Hazlewood v. Comm'r of Soc. Sec.*, No. 12-CV-798, 2013 WL 4039419, *6–7 (N.D.N.Y. Aug. 6, 2013) (affirming ALJ's determination that claimant could perform light work where supported by consultative examiner's opinion that claimant had "mild limitations in carrying and sitting[] and mild to moderate limitations in walking, pushing, and pulling"); *see also Cottrell v. Comm'r of Soc. Sec.*, No. 17-CV-6893, 2019 WL 201508, at *4 (W.D.N.Y. Jan. 15, 2019) ("[S]everal courts have upheld an ALJ's decision that the claimant could perform light . . . work even when there is evidence that the claimant had moderate difficulties in

standing or walking." (internal quotation marks omitted) (collecting cases)); *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (noting that some courts have found that "moderate limitations for sitting, standing and walking [are not] inconsistent with a determination that the claimant can perform the requirements of light or medium work" (collecting cases)).[3]

Plaintiff further argues that Dr. Dave's opinion is too vague and ambiguous to support the ALJ's RFC assessment. ECF No. 7-1 at 17–18. The Second Circuit rejected such an argument regarding a very similar opinion. *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (rejecting plaintiff's argument that consultative examiner's opinion was "incomplete and vague" where opinion stated that plaintiff had "mild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting" (brackets omitted)).

Plaintiff further cites *Johnson v. Colvin*, for the proposition that, "'[b]ecause an RFC determination is a medical determination,' it is error for the ALJ to make this determination 'based on medical reports that do not specifically explain the scope of the claimant's work-related capabilities.'" No. 15-CV-649, 2016 WL 4472749, at *5 (W.D.N.Y. Aug. 25, 2016) (quoting *McClaney v. Astrue*, No. 10-CV-5421, 2012 WL 3777413, at *10 (E.D.N.Y. Aug. 10, 2012)); ECF

---

[3] Plaintiff attempts to equate Dr. Dave's opined limitation on her ability to lift, carry, push, and pull to a limitation in reaching and argues that the ALJ failed to account for a reaching limitation. ECF No. 7-1 at 18–19. An impairment of the ability to reach, which is a non-exertional impairment, is distinct from an impairment of the ability to lift, carry, push, or pull, which are all exertional impairments. 20 C.F.R. § 404.1569a(a), (b), (c)(vi) ("The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertional levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. . . . Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands[] . . . are considered nonexertional."); Social Security Ruling 96-9p, 1996 WL 374185, at *5 (S.S.A. July 2, 1996) ("[A] nonexertional limitation is an impairment-caused limitation affecting . . . reaching" (emphasis removed)). Dr. Dave did not note any impairment as to Plaintiff's ability to reach. Tr. 256. The ALJ "is entitled to rely not only on what the record says, but also on what it does not say." *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983).

No. 7-1 at 13. In *Johnson*, the ALJ gave "great weight" to the opinion of a psychiatrist and mental health records that were illegible and did not include a function-by-function assessment of the plaintiff. 2016 WL 4472749, at *5. The court ultimately remanded based on the illegibility of those relevant records. *Id.* Plaintiff also cites *Dailey v. Astrue*, a case in which there was no assessment of the "plaintiff's functional limitations arising solely from her mental impairments." No. 09-CV-99, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) *report and recommendation adopted*, 2010 WL 4703591 (Nov. 19, 2010). Here, however, the ALJ placed weight on a consultative examiner's assessment of Plaintiff's functional limitations that is both legible and consistent with the ALJ's RFC assessment. Doing so was not error.

### B.     Treating Physician Rule

For claims filed before March 27, 2017, an ALJ must give a treating physician's opinion regarding the nature and severity of a claimant's impairments controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) (noting the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, the ALJ must "explicitly consider" "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount

of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Guerra v. Saul*, 778 F. App'x 75, 76–77, 76 n.2 (2d Cir. 2019) (summary order) (brackets in original). Failure to do so constitutes "procedural error warranting remand unless a searching review of the record assures the reviewing court that the substance of the treating physician rule is not traversed." *Id.* at 77.

Plaintiff argues that the ALJ traversed the treating physician rule. ECF No. 7-1 at 14–17. On August 31, 2016, Plaintiff was seen by P. Jeffrey Lewis, M.D., who reported that Plaintiff was "experiencing disabling back pain." Tr. 246. He noted that Plaintiff was "on total disability" and that Plaintiff did "not feel she c[ould] go back to work and [wa]s going to apply for Social Security disability." *Id.* He noted that Plaintiff "had some benefit from physical therapy but she says the pain is the same and she does not want to have anymore [sic] physical therapy" or surgery. *Id.* He discussed the possibility of a lumbar fusion and said that he would reevaluate her if her pain worsened and she wished to proceed with surgical treatment. *Id.*

The ALJ treated Dr. Lewis's statement that Plaintiff was "on total disability" as an opinion and afforded it "minimal weight." Tr. 17. The ALJ explained that "the only treatment recommended has been physical therapy and medication." *Id.*[4] That reason alone is not a sufficiently "good reason" for rejecting Dr. Lewis's "opinion." *Morris v. Colvin*, No. 15-CV-5600, 2016 WL 7235710, at *9 (E.D.N.Y. Dec. 14, 2016) ("[T]he plaintiff's 'conservative course of

---

[4] Plaintiff takes umbrage with this characterization of the record, arguing that Plaintiff was a surgical candidate. ECF No. 7-1 at 15, 17. But the progress notes show that, although lumbar fusion surgery was discussed, it does not appear that it was ever recommended. Tr. 239 ("*If [physical therapy] is not effective* than [sic] surgery could be performed . . . ." (emphasis added)), 242 ("*If at any point her pain worsens or the therapy stops working*[,] we can then further discuss the possibility of lumbar surgery." (emphasis added)), 244 ("At this point [Plaintiff] is able to tolerate the pain and is not interested in any lumbar surgery."). Although conservative treatment alone was not a "good reason" for rejecting the opinion of her treating physician, as discussed below, it was perfectly appropriate for the ALJ to consider Plaintiff's conservative course of treatment in evaluating Plaintiff's credibility.

9

treatment' . . . does not provide a 'good reason' for rejecting the treating physicians' opinions."). The ALJ also noted that Plaintiff's progress notes did not reflect "work-precluding limitations," Tr. 17, but the ALJ's basis for this conclusion is not a sufficiently "good reason" for the ALJ to reject Dr. Lewis's opinion.[5]

Accordingly, the ALJ failed to explicitly provide good reasons justifying the weight she gave to Dr. Lewis's "opinion," but the Court may consider other reasons for rejecting an opinion that are apparent from the record and support the ALJ's decision. *See Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (summary order) (citing *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'")). Dr. Lewis's "opinion" was a conclusory statement regarding an issue reserved for the Commissioner.[6] *Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68, 2018 WL 6060484, at *4 (W.D.N.Y. Nov. 20, 2018) ("[I]t is well-settled that Plaintiff's disability is a determination reserved to the Commissioner, not a treating physician."); *Morris*, 2016 WL 7235710, at *9–10, *8 n.2 (holding that ALJ's reasons of

---

[5] The Court generally agrees that Dr. Lewis's progress notes do not suggest total disability. Tr. 239, 244 (noting improvement with physical therapy and tolerable pain levels); *Ecklund v. Comm'r of Soc. Sec.*, 349 F. Supp. 3d 235, 245 (W.D.N.Y. 2018) (noting that treatment notes stating that plaintiff was "totally disabled appear[ed] to conflict with . . . treatment notes which . . . reveal[ed] that [the p]laintiff's condition was improving"). The ALJ, however, specifically noted that "[t]he progress notes reflect a small annular tear, small central disc herniation . . . and 'just some degenerative changes' at L1-2 but no listhesis on flexion/extension." Tr. 17. As a "lay person," the ALJ was not qualified to interpret whether such findings could in fact result in a disabling impairment. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[T]he ALJ simply was not in a position to know whether the absence of muscle spasms would in fact preclude the disabling loss of motion described by Dr. Ergas in his assessment.").

[6] Further, the Court is unconvinced that Dr. Lewis's statement even qualifies as a medical opinion. 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Plaintiff testified that no doctor has ever told her she is disabled, Tr. 38, and Dr. Lewis's statement appears to simply be an echo of Plaintiff's report that "[s]he does not feel she can go back to work," rather than a reasoned medical judgment about the nature and severity of her impairments. Tr. 246.
10

conservative treatment and interpretation of progress notes were not sufficiently "good" to reject treating physician's opinion, but noting that ALJ was justified in rejecting opinion that plaintiff was "totally and permanently disabled from work" because it was an issue reserved for the commissioner).

Further, Dr. Lewis's treatment of Plaintiff was relatively brief; he saw her five times over the course of ten months. Tr. 234–35, 239–42, 244–47. Finally, Dr. Dave's opinion, which is provided in functional terms, provides a strong basis for rejecting Dr. Lewis's conflicting, conclusory opinion. *See Halloran*, 362 F.3d at 32 ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (holding that an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole"). The Second Circuit has affirmed the rejection of a treating psychiatrist's opinion under similar circumstances. *Camille*, 652 F. App'x at 27 (affirming rejection of treating psychiatrist's opinion where it conflicted with the opinion of a State agency consulting psychologist, the psychiatrist only completed a check-box form without a narrative, the opinion was in conflict with psychiatrist's own treatment notes, and plaintiff was treated by psychiatrist intermittently). Accordingly, the treating physician rule was not traversed by the ALJ.[7]

C.   *Substantial Evidence*

Plaintiff generally argues that the ALJ's RFC assessment was not supported by substantial evidence and raises various other perceived flaws in the ALJ's analysis. ECF No. 7-1 at 12–20.

---

[7] To the extent Plaintiff claims that the ALJ needed to recontact Dr. Lewis, ECF No. 7-1 at 16–17, "[t]here is no duty to re-contact a treating physician to obtain a function-by-function analysis of plaintiff's impairments where consultative physicians assess a plaintiff's functional limitations and provide an opinion on them." *Ecklund*, 349 F. Supp. 3d at 245 (internal quotation marks and brackets omitted).

11

"[I]t is well-settled that a consulting . . . examiner's opinion may . . . constitute substantial evidence to support a decision." *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018). Here, the ALJ properly placed weight on the opinion of Dr. Dave and discussed other evidence supporting her RFC assessment. Tr. 13–18.

Although Plaintiff's arguments are not entirely clear, she appears to take issue with the ALJ's treatment of her credibility, particularly with regard to her ability to sit and stand. ECF No. 7-1 at 17–19. At the hearing, Plaintiff testified that she has difficulty sitting and standing for long periods of time. Tr. 35. Specifically, she experiences lower back pain if she sits or stands for longer than half an hour. Tr. 38–39. She also reported difficulty going up stairs, crouching, bending to pick things up off the floor, reaching with her arms in front of her and overhead, turning her head, standing after sitting, getting out of bed in the morning, and sleeping due to her back pain. Tr. 39–42. The ALJ found that Plaintiff's medically determinable impairments could cause her alleged symptoms, but the ALJ declined to credit the Plaintiff's testimony regarding the intensity, persistence, and limiting effects of those symptoms. Tr. 16.

The ALJ first noted that Plaintiff stopped working more than a year before her alleged onset date and, accordingly, appeared to stop working "for non-disability reasons." *Id.* Plaintiff takes issue with the ALJ's comment that "finances appear to be a large impetus in this case." ECF No. 7-1 at 19 (quoting Tr. 17). The Court agrees that "finances" do not appear to be an appropriate consideration given that—due to the income limitations associated with the step-one consideration, *see* 20 C.F.R. § 404.1574 (discussing income limitations for employees), and the nature of the benefits sought (financial)—it is difficult to imagine a case in which a claimant's finances would not be an "impetus" for the claim. The ALJ, however, was entitled to consider Plaintiff's employment status prior to her onset date. Plaintiff's inability to find work prior to her onset date

supports the ALJ's conclusion that her medical impairments are not necessarily the cause of her unemployment. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) ("[J]ust as a good work history may be deemed probative of [a claimant's] credibility, a poor work history can reasonably be deemed to have the opposite significance.").

The ALJ further discussed Plaintiff's medical history and daily activities. Tr. 16–17. On August 8, 2015, Plaintiff was in a car accident, which injured her back. Tr. 35, 210. Even immediately after the accident, she was ambulatory. Tr. 210. On the day of her accident, she was examined and found to have a contusion from the seatbelt and "a probable old coccyx fracture." Tr. 207–08. No fractures or other acute injuries were identified. *Id.* She was discharged that same day, reported her pain to be less than five on a ten-point scale, and her condition was described as good. Tr. 215.

Since the accident, her treatment regimen has consisted entirely of pain management and physical therapy. Tr. 36. She testified that her back pain has been the same since her accident, Tr. 42, but the medical records and her testimony reflect some improvement with physical therapy. Tr. 43, 231, 239, 399, 401, 419–21, 423. The ALJ's consideration of this conservative course of treatment was appropriate in evaluating Plaintiff's credibility. *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 125–26 (2d Cir. 2016) (summary order).

Further, many progress notes reflect that, although she consistently reported back pain, the pain was stable, she had no weakness, and she had a normal gait. Tr. 357–59, 366, 380–82, 392–95, 405, 412–14. Plaintiff argues that she could only sit and stand for about thirty minutes without pain, which is consistent with a report she made to a medical provider. ECF No. 7-1 at 17–19; Tr. 403–04. But "disability requires more than mere inability to work without pain." *Prince v. Astrue*,

13

490 F. App'x 399, 400 (2d Cir. 2013) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)).

Further, Plaintiff cooks for herself and her husband, does laundry, attends church, watches TV, occasionally helps her husband get dressed, shops for groceries, carries the bags into the house afterwards (but her husband will carry the heavy stuff), does the dishes, dresses herself (but it is "kind of hard," she has difficulty getting clothes over her head), bathes herself, and goes out to dinner once a month. Tr. 36–38, 40, 42–44. She testified that she can lift thirty pounds. Tr. 38. These activities were largely consistent with those she reported at her consultative examination. Tr. 253–54. The Court perceives no error in the ALJ's consideration of these daily activities in discounting Plaintiff's credibility. *Torina v. Comm'r of Soc. Sec.*, No. 17-CV-1216, 2019 WL 2325078, at *6 (W.D.N.Y. May 31, 2019); *see also Forbes v. Colvin*, No. 13-CV-207, 2015 WL 4411511, at *7 (W.D.N.Y. July 20, 2015) ("[T]he ALJ properly found . . . Plaintiff's subjective complaints not fully credible on the basis of his admitted daily activities, poor work history, the objective medical evidence, lack of significant medical treatment for his impairments, lack of consultation by specialists, and the credible opinion evidence.").

It was up to the ALJ to resolve and weigh conflicting evidence. Plaintiff has identified evidence that conflicts with the ALJ's RFC determination but has failed to show that the ALJ's determination was not supported by substantial evidence. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("[W]hether there is substantial evidence supporting [Plaintiff]'s view is not the question here; rather, [the Court] must decide whether substantial evidence supports *the ALJ's decision*."); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence"); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)

("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Here, the ALJ's determination regarding Plaintiff's RFC was reasonable and supported by substantial evidence.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 8, is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 7, is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 22, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court